IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULFSTREAM SHIPBUILDING, LLC | Civil Action No.: _____ |
| Plaintiff, | |
| v. | Judge: |
| C-FLY MARINE SERVICES, LLC, BAYOU METAL SUPPLY, LLC, RINA USA, INC., and NAUTILUS GLOBAL, LLC | Magistrate: |
| Defendants. | |

## NOTICE OF REMOVAL

NOW INTO COURT, through undersigned counsel, comes Defendant, RINA USA, INC. ("RINA USA"), and hereby removes to this Honorable Court the civil action filed by Plaintiff in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana, pursuant to 9 U.S.C. § 205. With full reservation of all rights, exceptions, and defenses, including but not limited to jurisdiction, venue, and service, RINA USA respectfully states as follows:

**A.      Factual Background**

1.      On or about October 26, 2018, Plaintiff, Gulfstream Shipbuilding, LLC ("Gulfstream" or "Plaintiff"), filed a Petition for Damages in the 22nd Judicial District Court for the Parish of St. Tammany, Louisiana, Case No. 2018-15247 (the "Original Petition").[1] In the Original Petition, Plaintiff named as defendants C-Fly Marine Services, LLC ("C-Fly"), Bayou Metal Supply, LLC ("Bayou Metal"), Nautilus Global, LLC ("Nautilus"), and RINA USA.

---

[1] The Original Petition is attached hereto as **Exhibit A**.

35159v.1

2.      RINA USA responded to the Original Petition by filing Exceptions of Prematurity and/or Lack of Subject Matter Jurisdiction, No Cause of Action, and Vagueness in the state court action.[2] C-Fly also filed Exceptions in the state court.[3] Bayou Metal filed an Answer and Reconventional Demand.[4] The state court held a hearing on the Exceptions on February 13, 2019. The state court directed Gulfstream to amend its Petition to cure pleading deficiencies.

3.      On or about March 14, 2019, Gulfstream filed its First Supplemental and Amending Petition (the "Amended Petition").[5] In the Amended Petition, Gulfstream omitted Nautilus from the list of defendants. Upon information and belief, Nautilus has not been officially dismissed from the state court proceeding, but Nautilus was never served and did not make an appearance in the state court proceeding.

4.      RINA USA is a Florida corporation and is a subsidiary of RINA S.p.A. ("RINA S.p.A."), a company organized under the laws of Italy with its principal place of business in Genoa, Italy.[6]

5.      RINA S.p.A. entered into a contract – Offer No. 2016/7918 dated June 17, 2016 – with Gulfstream to perform a drawings review and calculations for the admeasurement of the tonnage of the Gulfstream's vessel, EV KRAMER. The contract was subject to RINA S.p.A.'s

---

[2] RINA USA's Exceptions are attached hereto as **Exhibit B**. Gulfstream's Opposition is attached hereto as **Exhibit C**. RINA USA's Reply in Support of Exceptions is attached hereto as **Exhibit D**. The proposed Order on the Exceptions is attached hereto as **Exhibit E**. While a proposed Order on the Exceptions has been submitted to the state court, RINA USA has not yet received an executed Order. Thus, we submit only the unexecuted proposed Order.
[3] C-Fly's Exceptions, Gulfstream's Opposition, C-Fly's Reply, and the Court's Judgment on those Exceptions are collectively attached hereto as **Exhibit F**.
[4] Bayou Metal's Answer and Reconventional Demand is attached hereto as **Exhibit G**.
[5] The Amended Petition is attached hereto as **Exhibit H**.
[6] *See* **Exhibit B**, RINA USA's Memorandum in Support of Exceptions, at p. 1 and Exhibit 1.

General Conditions, which were attached to the Contract. (The contract and the General Conditions are collectively referred to herein as the "Contract").[7]

6.      The Contract was signed by a representative of Gulfstream.[8]

7.      Just above the signature line, the Contract reads, "The undersigned declares to have read, understood and approved the clause[] . . . [Number] 6 (Jurisdiction) . . . contained in the "General Conditions", herewith attached."[9] That referenced provision number 6 – which Gulfstream specifically acknowledged having read, understood, and approved – is an arbitration and choice of law clause.

8.      The arbitration and choice of law clause (the "Arbitration Agreement") states:

> **Article 6**
> **6.1** - <u>Any dispute arising from or in connection with the Rules or with the Services of the Society</u>, including any issues concerning responsibility, liability or limitations of liability of the Society, <u>will be determined in accordance with Italian Law and settled through arbitration</u> assigned to a board of three arbitrators who will proceed in compliance with the Rules of the Chamber of National and International Arbitration of Milan. <u>Arbitration will take place in Genoa, Italy</u>.[10]

9.      The Contract also contains the following provisions relevant to the Arbitration Agreement:

> "Society" or "RINA" means RINA S.p.A. and/or all the companies in the RINA Group which provide the Services.[11]

---

[7] The Contract is attached hereto as **Exhibit I**. The Contract, at **Exhibit I**, p. 4, reads, "The activity . . . will be carried out in compliance with RINA technical Rules applicable to the service required and will be subject to the relevant General Conditions. The undersigned declares to have received, attached to the present confirmation order, the a.m. 'General conditions'."

[8] *Id.* at pp. 5-6. Pages 5 and 6 of Exhibit I are identical, except page 6 contains a signature. The reproduction of page 6 resulted in a smaller version of that page.

[9] *Id.*

[10] *Id.* at p. 8, Section 6.1 (emphasis added).

[11] *Id.* at p. 7, Section "Definitions."

3

"Services" means the activities described in Article 1 below,[12] rendered by the Society upon request made by or on behalf of the Interested Party.[13]

10.     Gulfstream's Amended Petition alleges that RINA USA breached its contract with Gulfstream and was negligent with respect to the performance of the drawings review and calculations for the admeasurement of the tonnage Gulfstream's vessel, EV KRAMER. The performance of these services complained of in Gulfstream's Amended Petition is the subject of the Contract.

11.     Because Gulfstream's claims arise out of the performance of the drawings review and calculations for the tonnage admeasurement that are the subject of the Contract, Gulfstream's claims against RINA USA constitute a dispute arising from or in connection with the Services of the Society. Thus, the claims are subject to the Arbitration Agreement.

**B.     Removal is proper under 9 U.S.C. § 205 because the Arbitration Agreement falls under the New York Convention and the dispute relates to the Arbitration Agreement.**

12.     The Convention on the Recognition and Enforcement of Foreign Arbitral Awards (the "New York Convention" or "Convention") was implemented in the United States by 9 U.S.C. §§ 201, *et seq*.

13.     9 U.S.C. § 205 provides, in pertinent part:

> Where the subject matter of an action or proceeding pending in a State court relates to an arbitration agreement or award falling under the Convention, the defendant or the defendants may, at any time before the trial thereof, remove such action or proceeding to the district court of the United States for the district and division embracing the place where the action or proceeding is pending. The procedure for removal of causes otherwise provided by law shall apply, except that the ground for removal provided in this section

---

[12] Article 1 of the Contract's General Conditions lists various services provided by the Society, including classification services, issuing certificates and reports based on survey activities, and "technical assistance activities on request."
[13] Exhibit I, p. 7, at Section "Definitions."

need not appear on the face of the complaint but may be shown in
the petition for removal.

14.     Thus, removal under 9 U.S.C. § 205 is proper when (1) the parties' arbitration
agreement falls under the New York Convention, and (2) the dispute "relates to" the arbitration
agreement. *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. 09-4169, 2009 WL 2599232, at *2
(E.D. La. Aug. 17, 2009).

15.     Removal is proper under 9 U.S.C. § 205 because the Arbitration Agreement falls
under the New York Convention and the dispute relates to the Arbitration Agreement.

### *(1) The Arbitration Agreement falls under the New York Convention.*

16.     Proceedings that fall under the New York Convention are deemed to arise under
the laws and treaties of the United States, and the U.S. district courts have original jurisdiction
over such proceedings, regardless of the amount in controversy. 9 U.S.C. § 203.

17.     The New York Convention's implemeting legislation, at 9 U.S.C. § 202, provides
that the following agreements fall under the Convention:

> An arbitration agreement . . . arising out of a legal relationship,
> whether contractual or not, which is considered as commercial,
> including a transaction, contract, or agreement [subject to the
> Federal Arbitration Act], falls under the Convention. An agreement
> . . . arising out of such a relationship which is entirely between
> citizens of the United States shall be deemed not to fall under the
> Convention unless that relationship involves property located
> abroad, envisages performance or enforcement abroad, or has some
> other reasonable relation with one or more foreign states. For the
> purpose of this section a corporation is a citizen of the United States
> if it is incorporated or has its principal place of business in the
> United States.

18.     Thus, the Fifth Circuit has itemized the following requirements for an agreement to
fall under the Convention:

(1) there is a written agreement to arbitrate the matter;
(2) the agreement provides for arbitration in a Convention signatory nation;

(3) the agreement arises out of a commercial legal relationship; and

(4) a party to the agreement is not an American citizen.

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017) (quoting

*Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004)) (internal

quotation marks omitted).

19.     In the event that an arbitration agreement is entirely between citizens of the United

States, it still falls under the Convention (and the fourth requirement above is satisfied) if the

agreement "involves property located abroad, envisages performance or enforcement abroad, or

has some other reasonable relation with one or more foreign states." 9 U.S.C. § 202; *see also*

*Brittania-U Nigeria*, 866 F.3d at 712; *Rain CII Carbon, LLC v. ConocoPhillips Co.*, No. 09-4169,

2009 WL 2599232, at *2-3 (E.D. La. Aug. 17, 2009).

20.     "The 'Convention contemplates a very limited inquiry by the courts.' Resolving the

question of whether the agreement falls under the Convention will ordinarily prove quick and easy,

without requiring too much merits-like investigation by the district court." *Beiser v. Weyler*, 284

F.3d 665, 672 n.7 (5th Cir. 2002).

21.     The Arbitration Agreement squarely falls under the Convention. It is a written

agreement to arbitrate "[a]ny dispute arising from or in connection with" the services provided

with respect to the vessel tonnage admeasurement by "RINA S.p.A. and/or all the companies in

the RINA Group which provide[d] the Services,"[14] which includes RINA USA.[15] Thus, the first

requirement is satisfied because there is a written agreement to arbitrate the matter.

---

[14] Contract General Conditions, Exhibit I, at p. 7-8, at Sections "Definitions" and 6.1.
[15] RINA USA's Exceptions, Exhibit B, at Exhibit 1, Declaration of Maurizio Nigito.

22.     The Arbitration Agreement provides for arbitration in Italy, which is a signatory to the New York Convention.[16] Accordingly, the second requirement is satisfied because the Arbitration Agreement provides for arbitration in a Convention signatory nation.

23.     The Arbitration Agreement arises out of the parties' contract for services related to the tonnage admeasurement of Gulfstream's vessel, which is a commercial legal relationship.  *See Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017) (arbitration clause in confidentiality agreement fell under the Convention); *Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689, 697 (E.D. La. 2004) (employment contract is a commercial legal relationship); *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641, 647 (E.D. La. 2009) (contract of insurance is a commercial legal relationship); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-cv-6657, 2018 WL 4627387, at *2 (E.D. La. Sept. 27, 2018) (same). Thus, the third requirement is satisfied because the Arbitration Agreement arises out of a commercial legal relationship.

24.     RINA S.p.A., an Italian citizen, is a party to the Arbitration Agreement. Accordingly, the fourth requirement is satisfied because a party to the Arbitration Agreement is not an American citizen.

25.     Moreover, although no additional evidence is required, other factors also show that the Arbitration Agreement falls under the Convention because the Contract envisages enforcement abroad and because it has other reasonable relations with a foreign state. 9 U.S.C. § 202. The Contract envisages enforcement abroad because it provides for resolution of any disputes in Genoa, Italy. It is also related to a foreign state because the Contract is governed by Italian law.[17]

---

[16] U.N. Commission on Int'l Trade Law, Status of Convention on the Recognition and Enforcement of Foreign Arbitral Awards, http://www.uncitral.org/uncitral/en/uncitral_texts/arbitration/NYConvention_status.html (last accessed March 28, 2019).
[17] Exhibit I, p. 8, at Section 6.1.

In addition, in the Contract, Gulfstream acknowleged awareness and compliance with various Itialian laws,[18] which shows that the Contract was related to a foreign state.

26.     The four-part test is satisfied, and the Arbitration Agreement clearly falls under the Convention.

### (2) *The dispute "relates to" the Arbitration Agreement.*

27.     The subject matter of an action "relates to" an arbitration agreement under § 205 when the action has some connection or relation to the arbitration agreement. *Acosta v. Master Maintenance & Construction, Inc.*, 452 F. 3d 373, 378-79 (5th Cir. 2006). "[T]he phrase 'relates to' 'conveys a sense of breadth' and 'sweeps broadly.'" *Id.* at 377 (quoting *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002)). "[A] clause determining the forum for resolution of specific types of disputes relates to a lawsuit that seeks the resolution of such disputes." *Id.* at 379.

28.     There can be no dispute that Gulfstream's claims "relate to" the Arbitration Agreement. The Arbitration Agreement provides that all disputes arising from or in connection with the services provided under the Contract will be determined in arbitration in Italy. Gulfstream claims that the services provided under the Contract were negligent performed, and that RINA[19] breached the Contract. Thus, the Arbitration Agreement determined the forum for resolution of disputes arising from the services performed, and Gulfstream's lawsuit seeks resolution of such

---

[18] See Contract, Exhibit I, at pp. 4 ("The Client declares to be aware of the information . . . pursuant to Italian Law 196/03, that is published on RINA's website."); *id.* at pp. 5-6, ("Organizational Model, Management and Control in Accordance with Italian Legislative Decree No. 231/2001 . . . The Client declares to be aware of the laws in force . . . with particular reference to the Italian law."). This also shows that Gulfstream was fully aware that it was contracting with an Italian company.

[19] Gulfstream alleges that RINA USA breached the contract. However, the Contract was between Gulfstream and RINA S.p.A., as shown in the Contract. The distinction is immaterial for the purposes of this Notice of Removal because the Contract encompasses both RINA S.p.A. and RINA USA: "'Society' or 'RINA' means RINA S.p.A. and/or all the companies in the RINA Group which provide the Services." Contract, Exhibit I, p.7, at Section "Definitions."

disputes. *See Acosta*, 452 F.3d at 379 (5th Cir. 2006). Accordingly, the state court suit "relates to" the Arbitration Agreement for the purposes of 9 U.S.C. § 205.

**C.     Removal is procedurally proper under the New York Convention because it is timely and because the unanimous written consent of all defendants is not required for removal under the Convention.**

*(1) Removal is timely under the Convention.*

29.     9 U.S.C. § 205 provides that a defendant may remove a suit that relates to an arbitration agreement governed by the Convention "at any time before the trial" of the state court suit.

30.     Removal under 9 U.S.C. § 205 is broader than removal under the general removal statutes, 28 U.S.C. §§ 1441, 1446. "Congress granted the federal courts jurisdiction over Convention cases and added one of the broadest removal provisions, § 205, in the statute books. So generous is the removal provision that we have emphasized that the general rule of construing removal statutes strictly against removal 'cannot apply to Convention Act cases because in these instances, Congress created special removal rights to channel cases into federal court.'" *Acosta v. Master Maintenance & Construction, Inc.*, 452 F. 3d 373, 377 (5th Cir. 2006) (quoting *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1213 (5th Cir. 1991)).

31.     Removal under the Convention can be done at any time before trial, and the 30-day time period for removal under the general removal statutes does not apply to suits removed under 9 U.S.C. § 205. *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1212 (5th Cir. 1991) ("Under [28 U.S.C. §] 1441(d), a defendant may remove 'at any time before cause shown,' and under [9 U.S.C. §] 205, a defendant may remove 'at any time before the trial.' Other cases may be removed only within 30 days after the defendant receives a pleading."); *Gulledge v. Certain Underwriters at Lloyd's, London*, No. 18-cv-6657, 2018 WL 4627387, at *2 (E.D. La.

9

Sept. 27, 2018) (finding that removal was timely because the defendant removed before the state

court trial); *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641, 649 (E.D. La. 2009)

(same); *Amizola v. Dolphin Shipowner, S.A.*, 354 F. Supp. 2d 689, 696 (E.D. La. 2004) ("Section

205 . . . allows removal of proceedings pending in state court  . . . at any time before trial, and the

thirty day limitation of § 1446(b) does not apply."); *Simmons v. Sabine River Authority of La.*, 823

F. Supp. 2d 420, 426 (W.D. La. 2011) (30-day window for removal does not apply to removals

based on the Convention); *Acosta v. Master Maintenance & Construction, Inc.*, 52 F. Supp. 2d

699, 705 (M.D. La. 1999) ("[T]he phrase, 'any time before trial,' as used in 9 U.S.C. § 205, means

that removal may occur at any time before an adjudication on the merits.").

32.     Removal of this suit from state court is timely because there has been no trial or

other adjudication on the merits. The state court suit is still in the initial stages, and discovery has

not begun.

### *(2) Written consent of all defendants is not required for removal.*

33.     When a defendant removes based on the Convention under 9 U.S.C. § 205, the

consent of all defendants is not required. *Acosta v. Master Maintenance and Construction, Inc.*,

52 F. Supp. 2d 699 (M.D. La. 1999); *Viator v. Dauterive Contractors, Inc.*, 638 F. Supp. 2d 641

(E.D. La. 2009); *Faulk v. Alcoa Inc.*, No. 16-cv-1461, 2017 WL 6821869 (W.D. La. Jan. 31, 2017);

*Simmons v. Sabine River Authority of La.*, 823 F. Supp. 2d 420 (W.D. La. 2011).

34.     In *Acosta*, the court found that the jurisprudence interpreting the general removal

statute, 28 U.S.C. § 1441, that requires the consent of all defendants for removal "has no

application" to the interpretation of the Convention removal statute, 9 U.S.C. § 205. *Acosta*, 52 F.

Supp. 2d at 709. The court reasoned, "A construction of § 205 . . . which requires consent of all

defendants would constitute an obstruction to the free flow of foreign trade, a consideration which

is not involved in removals under the general removal statute. Since the purpose of the Convention Act is to encourage foreign trade, such a construction should not be adopted . . . ." *Id.*

35. Similarly, in *Viator*, the court also determined that consent by all defendants to removal is not required under the Convention. The court found that "to import the unanimity rule into Section 205 would severely undermine the enforcement of foreign arbitrations in violation of arbitration agreements and the Convention." *Viator*, 638 F. Supp. 2d at 651 n.15. The court cited Congress's intent of guiding cases falling under the Convention away from state courts to ensure a uniform body of federal law: "The Fifth Circuit acknowledged in *McDermott*, in comparing the Foreign Services Immunities Act and the Convention, that 'Congress deliberately sought to channel cases ... away from the state courts and into federal courts ... for the purpose of assuring a unitary federal jurisprudence.'" *Viator*, 638 F. Supp. 2d at 651 (quoting *McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1213 (5th Cir. 1991)).

36. The court in *Faulk* also determined that unanimous consent of all defendants is not required for removal under the Convention: "[C]ourts in this Circuit have . . . concluded that the general rule of unanimity . . . does not apply to removals under the Convention." *Faulk*, 2017 WL 6821869, at *1 (quoting *Simmons*, 823 F. Supp. 2d at 427 n.10) (alterations in original). The court reasoned that such a conclusion best achieves the goals of the Convention. *Id.*

37. Because removal is timely and the consent of all defendants is not required under 9 U.S.C. § 205, removal is procedurally proper.

38. RINA USA has attached all process, pleadings, and orders served upon it as exhibits to this Notice of Removal.

WHEREFORE, Defendant RINA USA, Inc., hereby removes this matter and requests that jurisdiction be assumed over this suit and that the civil action be maintained in the United States District Court for the Eastern District of Louisiana.

Respectfully submitted,

/s/      *Ashley E. Bane*
Ashley E. Bane (La. Bar No. 35640)
ashley.bane@wilsonelser.com
Alanson T. Chenault, IV (La. Bar No. 20747)
atc@frfirm.com
WILSON, ELSER, MOSKOWITZ,
EDELMAN & DICKER LLP
650 Poydras Street, Suite 2200
New Orleans, Louisiana 70130
Telephone:    504-702-1710
Facsimile:    504-702-1715
*Counsel for RINA USA, Inc.*

12

## CERTIFICATE OF SERVICE

I hereby certify that on April 5, 2019, I electronically filed the foregoing document via this Court's CM/ECF electronic filing system, which will serve a copy on all enrolled counsel of record. I further certify that I have contemporaneously served a copy of the foregoing document on counsel of record via e-mail, fax, and/or U.S. mail, as follows:

Robert J. Killeen, Jr.
Killeen & Stern, P.C.
1811 Bering Drive, Suite 120
Houston, TX  77057
rkilleen@killeen-law.com
Fax: (713) 626-4545
*Counsel for Plaintiff*

Miles P. Clements
Phelps Dunbar LLP
365 Canal Street, Suite 2000
New Orleans, Louisiana 70130-6534
miles.clements@phelps.com
Fax: 504-568-9130
*Counsel for Bayou Metal Supply, LLC*

Robert S. Reich
Lawrence R. Plunkett, Jr.
Marva Jo Wyatt
Suite 1000, Two Lakeway Center
3850 N. Causeway Boulevard
Metairie, LA 70002
rreich@rapllclaw.com
lplunkett@rapllclaw.com
mwyatt@rapllclaw.com
*Counsel for C-Fly Marine Services, Inc.*

/s/ Ashley E. Bane

13

35159v.1