UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| GULFSTREAM SHIPBUILDING, LLC | CIVIL ACTION |
| VERSUS | NO: 19-9066 |
| C-FLY MARINE SERVICES, LLC, BAYOU METAL SUPPLY, LLC, RINA USA, INC., and NAUTILUS GLOBAL, LLC | SECTION: "J"(3) |

## ORDER AND REASONS

Before the Court is a *Motion for Stay Pending Arbitration* **(Rec. Doc. 4)** filed by Defendant, RINA USA, INC. ("RINA USA"). Plaintiff, Gulfstream Shipbuilding, LLC, opposes the motion (Rec. Doc. 24). RINA USA filed a reply (Rec. Doc. 29). Having considered the motion and legal memoranda, the record, and the applicable law, the Court finds that the motion should be **GRANTED**.

## FACTS AND PROCEDURAL HISTORY

This litigation arises from a contract entered between Plaintiff and RINA S.p.A., a company organized under the laws of Italy with its principal place of business in Genoa, Italy and the parent company of RINA USA. The contract—Offer No. 2016/7918 dated June 17, 2016—was entered into to perform a drawings review and calculations for the admeasurement of the tonnage of Plaintiff's vessel. RINA S.p.A.'s General Conditions were incorporated into the contract, including an

1

arbitration clause that a representative of Plaintiff specifically acknowledged having read, understood, and approved.

On October 26, 2018, Plaintiff filed suit against RINA USA, C-Fly Marine Services, Bayou Metal Supply, LLC, and Nautilus Global, LLC in the 22nd Judicial District Court for the Parish of St. Tammany. Plaintiff's amended petition alleges that RINA USA breached its contract with Plaintiff and was negligent with respect to the performance of the drawings review and calculations for the admeasurement of the tonnage of Plaintiff's vessel. RINA USA subsequently removed the action to this Court. RINA USA now seeks an order staying the proceedings because it alleges that the arbitration agreement included in the contract at issue falls under the Convention on the Recognition and Enforcement of Foreign Arbitral Awards.

## **LEGAL STANDARD**

The New York Convention "provides a carefully structured framework for the review and enforcement of international arbitral awards." *Karaha Bodas Co., L.L.C. v. Perusahaan Pertambangan Minyak Dan Gas Bumi Negara*, 364 F.3d 274, 287 (5th Cir. 2004). The following agreements fall under the New York Convention:

> An arbitration agreement or arbitral award arising out of a legal relationship, whether contractual or not, which is considered as commercial, including a transaction, contract, or agreement described in section 2 of this title, falls under the Convention. An agreement or award arising out of such a relationship which is entirely between citizens of the United States shall be deemed not to fall under the Convention unless that relationship involves property located abroad, envisages performance or enforcement abroad, or has some other reasonable relation with one or more foreign states. For the purpose of this section a corporation is a citizen of the United States if it is incorporated or has its principal place of business in the United States.

9 U.S.C. § 202.

The New York Convention was implemented in the United States by Chapter 2 of the Federal Arbitration Act ("FAA"). *See* 9 U.S.C. § 201 (the New York Convention treaty "shall be enforced in the United States courts in accordance with this chapter."). The New York Convention and the FAA "have 'overlapping coverage' to the extent that they do not conflict." *Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2nd Cir. 1997); *see also McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). Section 2 of the FAA provides that "[a] written provision in ... a contract evidencing a transaction involving commerce to settle by arbitration a controversy thereafter arising out of such contract or transaction ... shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for revocation of any contract." 9 U.S.C. § 2. Congress has, therefore, mandated the enforcement of valid arbitration agreements.

The FAA requires district courts to "compel arbitration of otherwise arbitrable claims, when a motion to compel arbitration is made." S*edco, Inc. v. Petroleos Mexicanos Mexican Nat'l Oil Co.*, 767 F.2d 1140, 1147 n.20 (5th Cir. 1985). Section 3 of the FAA provides:

> If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under the agreement in writing for such arbitration, the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

9 U.S.C. § 3. This provision is mandatory and demands a stay of the proceedings, at the request of a party, if the dispute is arbitrable and referred to arbitration. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006). Courts employ a two-step analysis to determine whether a party may be compelled to arbitrate. *Jones v. Halliburton Co.*, 583 F.3d 228, 233 (5th Cir. 2009). The Court first inquires whether the party has agreed to arbitrate the dispute at issue. *Id.* at 233-34. This question itself is further subdivided into two considerations: "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996). To determine whether the parties formed a valid agreement to arbitrate, the Court applies ordinary principles of state contract law. *Am. Heritage Life Ins. Co. v. Lang*, 321 F.3d 533, 537-38 (5th Cir. 2003). "[T]he federal policy favoring arbitration does not apply to the determination of whether there is a valid agreement to arbitrate between the parties." *Id.* at 538. In analyzing arbitrability, courts apply federal substantive law. *Grigson v. Creative Artists Agency, LLC*, 210 F.3d 524, 531 (5th Cir. 2000). Thus, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration, whether the problem at hand is the construction of the contract language itself or an allegation of waiver, delay, or a like defense to arbitrability." *Moses H. Cone*, 460 U.S. at 24-25. If the Court finds that there is a valid agreement to arbitrate between the parties and that the dispute in question falls within the scope of the arbitration agreement, the second step is to

determine whether any federal statute or policy renders the claims nonarbitrable. *Wash. Mut. Fin. Grp. v. Bailey*, 364 F.3d 260, 263 (5th Cir. 2004).

## **PARTIES' ARGUMENTS AND DISCUSSION**

### I. Whether Jurisdiction Exists Under the New York Convention

RINA USA argues that the instant proceeding should be stayed pending arbitration because Plaintiff agreed to arbitrate the claims asserted against RINA USA and the arbitration agreement falls under the New York Convention. (Rec. Doc. 4 at 1). Plaintiff argues in opposition that this Court lacks subject matter jurisdiction over the matter and RINA USA does not enjoy the benefit of the arbitration provisions contained in the RINA S.p.A. contract. (Rec. Doc. 24).

The New York Convention provides courts of the United States with jurisdiction over "[a]n action or proceeding falling under the Convention ... regardless of the amount in controversy." *Safety Nat'l Cas. Corp. v. Certain Underwriters At Lloyd's, London*, 587 F.3d 714, 724 (5th Cir. 2009) (alterations in original) (citation omitted); *see also* 9 U.S.C. § 203 (stating that "[a]n action or proceeding falling under the Convention shall be deemed to arise under the laws and treaties of the United States."); 9 U.S.C. § 202. Convention jurisdiction typically requires satisfaction of the following requirements: "(1) there is a written agreement to arbitrate the matter; (2) the agreement provides for arbitration in a Convention signatory nation; (3) the agreement arises out of a commercial legal relationship; and (4) a party to the agreement is not an American citizen." *Freudensprung v. Offshore Tech. Servs., Inc.*, 379 F.3d 327, 339 (5th Cir. 2004) (citing 9 U.S.C. § 202) (citation omitted); *see also*

*Brittania-U Nigeria, Ltd. v. Chevron USA, Inc.*, 866 F.3d 709, 712 (5th Cir. 2017). For an arbitration agreement that is "entirely between citizens of the United States" to fall under the New York Convention, it must "involve[ ] property located abroad, envisage[ ] performance or enforcement abroad, or ha[ve] some other reasonable relation with one or more foreign states." 9 U.S.C. § 202; *see also Freudensprung*, 379 F.3d at 339–41; *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, 456 Fed.Appx. 481, 484 (5th Cir. 2012).

Here, the first requirement is satisfied because the written Arbitration Agreement attached to the contract at issue agrees to arbitrate "[a]ny dispute arising from or in connection with" the tonnage admeasurement services provided by "RINA S.p.A. and/or all the companies in the RINA Group which provide the services," which includes RINA USA. (*See* Rec. Docs. 4-3 at 7, 8 and 1-3 at 16, 17). Second, the Arbitration Agreement provides for arbitration in Genoa, Italy, which is a signatory to the New York Convention. (*See* Rec. Doc. 1-2 at 24). Third, the Arbitration Agreement arises out of a commercial legal relationship whereby the parties contracted for services related to the tonnage admeasurement of Plaintiff's commercial vessel. Finally, a party to the Arbitration Agreement—RINA S.p.A.—is not an American citizen. Accordingly, this Court has jurisdiction under the New York Convention.

The Court finds that removal under the New York Convention was also proper. The removal provision, 9 U.S.C. § 205, allows for removal to a district court "at any time before the trial" "[w]here the subject matter of an action or proceeding pending

6

in a State court relates to an arbitration agreement or award falling under the Convention." If "an arbitration agreement falling under the Convention could conceivably affect the outcome of the plaintiff's case, the agreement 'relates to' to the plaintiff's suit. Thus, [a] district court will have jurisdiction under § 205 over just about any suit in which a defendant contends that an arbitration clause ... provides a defense." *Beiser v. Weyler*, 284 F.3d 665, 669 (5th Cir. 2002).

In the instant case, there is no question that the Arbitration Agreement attached to the contract relates to Plaintiff's suit, and "the arbitration agreements [here] could conceivably affect the disposition of [Plaintiff's] claims." *See id*. at 670. Accordingly, RINA USA's removal was proper.

## II.   Whether a Stay of the Proceedings is Mandatory

RINA USA argues that a stay of the proceedings is mandatory under 9 U.S.C. § 3 and § 202 because the instant dispute is within the scope of the Arbitration Agreement that falls under the New York Convention. (Rec. Doc. 4-1 at 7, 8, 9). Plaintiff does not directly address any of RINA USA's arguments, contending instead that "RINA US is not subject to 9 U.S.C. § 202 and does not enjoy the benefit of the arbitration provisions claimed in a RINA S.P.A. document." (*See* Rec. Doc. 24 at 1). Specifically, Plaintiff notes that all services were provided by RINA USA in Florida "rendering both the provisions of 9 U.S.C. § 202 and arbitration inapplicable," and Florida law invalidates RINA USA's demand for arbitration. (Rec. Doc. 24 at 2).

This Court has already determined that the Arbitration Agreement falls under the New York Convention. The FAA provisions in 9 U.S.C. Chapter 1 apply to

7

proceedings brought under the New York Convention to the extent that they do not conflict. 9 U.S.C. § 208; *see also Yusuf Ahmed Alghanim & Sons, W.L.L. v. Toys "R" Us, Inc.*, 126 F.3d 15, 20 (2nd Cir. 1997); *see also McDermott Int'l, Inc. v. Lloyd's Underwriters of London*, 944 F.2d 1199, 1208 (5th Cir. 1991). Under 9 U.S.C. § 3, the FAA mandates a stay pending arbitration on application of one of the parties if the dispute is arbitrable and referred to arbitration. *Tittle v. Enron Corp.*, 463 F.3d 410, 417 n.6 (5th Cir. 2006). In deciding a motion for a stay under 9 U.S.C. § 3, a court must determine "(1) whether there is a valid agreement to arbitrate between the parties; and (2) whether the dispute in question falls within the scope of that arbitration agreement." *Webb v. Investacorp, Inc.*, 89 F.3d 252, 257-58 (5th Cir. 1996).

In the instant case, the Court has already concluded that there is a written agreement to arbitrate. Additionally, the dispute before the Court clearly falls within the scope of the Arbitration Agreement. The Agreement provides that "[a]ny dispute arising from or in connection with the Rules or with the Services of the Society [RINA S.p.A. and/or RINA USA] … will be determined in accordance with Italian Law and settled through arbitration…." (Rec. Doc. 1-2 at 24). Plaintiff's amended petition asserts claims for breach of contract and negligence with respect to the tonnage admeasurement of Plaintiff's vessel, which are precisely the services contemplated by the contract at issue. For the foregoing reasons, the dispute falls within the scope of the Arbitration Agreement, and a stay of the proceedings is mandatory.

## CONCLUSION

Accordingly,

**IT IS ORDERED** that the motion to stay pending arbitration (Rec. Doc. 4) is **GRANTED**.

New Orleans, Louisiana, this 15th day of August, 2019.

CARL J. BARBIER
UNITED STATES DISTRICT JUDGE